UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

DEREK S.,[1]

Plaintiff,

DECISION AND ORDER

-vs-

1:24-CV-00974-MAV

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

## INTRODUCTION

On October 11, 2024, Derek S. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of the United States Social Security Administration's ("Commissioner") denial of his application for Disability Insurance Benefits ("DIB"). ECF No. 1. Plaintiff moved for judgment on the pleadings pursuant to Rule 12(c), ECF No. 10, and the Commissioner also moved for judgment on the pleadings, ECF No. 11.

For the reasons set forth below, Plaintiff's motion for judgment on the pleadings [ECF No. 10] is denied, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is granted.

## PROCEDURAL HISTORY

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

directly on the resolution of the motions presently before the Court.

## I. Plaintiff's Application

Plaintiff filed his application for DIB on August 22, 2022. Administrative Record ("AR") at 75, 178–179.[2] He alleged a disability onset date of April 21, 2022. AR at 178. The Social Security Administration ("SSA") denied his DIB claim on April 5, 2023, and denied on reconsideration on June 9, 2023. AR at 75, 85.

## II. Plaintiff's Hearing Before the ALJ

After the Commissioner denied his application at the initial level and on reconsideration, Plaintiff appeared with counsel via telephone on January 17, 2024, for a hearing before an Administrative Law Judge ("ALJ"). AR at 34–66.

During the hearing, Plaintiff testified that he has an MBA, was previously in the Army and National Guard, and used to work at Lowe's, PetSmart, and a nursing home. AR at 40–42. He had applied for jobs since the alleged onset date but had not received any offers. AR at 42.

Plaintiff said that he was prevented from working due to "having an extreme amount of anxiety at work which . . . caused [him] to be incomplete with tasks." AR at 43. He forgot tasks, lacked attention, and had poor relationships with coworkers. AR at 43. He used an inhaler for breathing issues. AR at 44. He saw a counselor once a month for mental health issues and saw a psychiatrist to manage his medications every three months. AR at 45–46. He had been diagnosed with anxiety and at the

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

time of the hearing had around one panic attack per month that lasted 20 or 25 minutes. AR at 46.

Plaintiff did crafting and woodworking and went to church on Sundays. AR at 47. His motivation for chores was "[u]sually very low." AR at 48. When crafting, he would be very motivated for a few days and then would "burn out fast." AR at 55. He sold crafts at a show once for four hours. AR at 56.

A vocational expert, Christine Ditrinco, also testified. AR at 61–65. She said that a hypothetical claimant, with an RFC identical to that which the ALJ ultimately found Plaintiff to have, would not be capable of performing Plaintiff's past relevant work but could perform jobs including laborer, dining room attendant, and hand packer. AR at 63–65.

## III. The ALJ's Decision

On February 28, 2024, the ALJ issued a decision finding that Plaintiff was not disabled, and therefore did not qualify for DIB. AR at 10–26.

At the outset, the ALJ found that Plaintiff met the insured status requirements for DIB[3] through December 31, 2027, and had not engaged in substantial gainful activity since his alleged onset date. AR at 12–13. Then, at step two of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ determined that

---

[3] Claimants must meet the insured status requirements of the Social Security Act to be eligible for DIB. *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3)

Plaintiff had the following severe impairments: asthma and "mental impairments identified as Attention Deficit Hyperactivity Disorder (ADHD), panic disorder, generalized anxiety disorder, and major depressive disorder." AR at 13.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. AR at 13.

Before proceeding to step four, the ALJ determined that Plaintiff had the residual functional capacity[5] ("RFC") to perform work at all exertional levels, but that Plaintiff could never work in humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. AR at 15. He could perform "simple, routine, and repetitive tasks," and simple work-related decisions, he could interact with supervisors, coworkers, and the public occasionally, and could tolerate few (occasional) changes to the worksite and routine. AR at 15.

At step four of the sequential evaluation, the ALJ found that Plaintiff was not able to perform any of his past relevant work, but, considering his age, education,

> whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014); citing, *inter alia*, 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

[5] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545.

work experience, and RFC, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including a laborer, dining room attendant, and a hand packer. AR at 20–22. Therefore, the ALJ found that Plaintiff was not disabled, and not entitled to DIB payments. AR at 22.

On August 7, 2024, the Appeals Council denied Plaintiff's request to review the ALJ's decision. AR at 1–6. The ALJ's decision thus became the "final decision" of the Commissioner. *See Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (citing 20 C.F.R. § 404.981) ("[I]f the Appeals Council denies review, the ALJ's decision becomes the [Commissioner]'s final decision.").

## LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to DIB if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months."

Where an individual's application for DIB has been denied, 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision. The fourth sentence of § 405(g) authorizes the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner . . . upon a showing that there is new evidence which is material and that there is good

cause for the failure to incorporate such evidence into the record in a prior proceeding." *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988) (discussing § 405(g)).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, the reviewing court must first determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (noting that the phrase "substantial evidence" is a term of art used in reviewing administrative agency decisions to signify evidence that amounts to "more than a mere scintilla"). Thus, once an ALJ finds facts, a reviewing court can reject those facts "only if a reasonable factfinder would have to conclude otherwise." *Brault*, 683 F.3d at 448. Yet, although "the evidentiary threshold for the substantial evidence standard

is not high, . . . [it] is also not merely hortatory: [i]t requires relevant evidence which would lead a reasonable mind to concur in the ALJ's factual determinations." *Colgan v. Kijakazi*, 22 F.4th 353, 359 (2d Cir. 2022) (internal quotation marks omitted).

## DISCUSSION

Plaintiff raises two issues in his motion for judgment on the pleadings. First, he argues that the ALJ erred by not considering the medical opinion of his treating psychiatric nurse practitioner Stefania Flynn-Aikins that Plaintiff could only work part time. ECF No. 10-1 at 18–20. Second, he argues that the ALJ's decision is not supported by substantial evidence. ECF No. 10-1 at 21–24.

In response, the Commissioner argues that the ALJ was not required to explain the persuasiveness of Flynn-Aikins' medical opinion because it opined on the ultimate issue of Plaintiff's disability. ECF No. 11-1 at 9–10. The Commissioner further argues that the ALJ's decision is supported by substantial evidence. ECF No. 11-1 at 6–14.

For the following reasons, the Court agrees with the Commissioner.

### 1. The ALJ did not need to discuss Flynn-Aikins' medical opinion.

Plaintiff's treating nurse practitioner Flynn-Aikins saw Plaintiff for a medication adjustment on June 8, 2021, before the alleged onset date of April 21, 2022, and wrote in the visit note that Plaintiff was "unable to function at work full-time because of panic attacks and difficulty with concentration. Because of his deterioration I agree that patient would benefit from part time work." AR at 288. She repeated as part of Plaintiff's "care plan" that he was "to work part-time" at that

appointment and two others. AR at 286, 289, 292.

Notably, Flynn-Aikins also filled out a medical treating source statement for Plaintiff, AR at 646–648, in which she opined that Plaintiff had poor or no ability to maintain regular attendance, a normal routine, and to complete a normal workday and workweek. AR at 646–647. The ALJ assessed that opinion and found it "limitedly persuasive." AR at 19–20.

Plaintiff now argues that the ALJ committed legal error by failing to consider the opinion in Flynn-Aikins' treatment notes that Plaintiff should work part time. ECF No. 10-1 at 18–20. The Commissioner maintains that the opinion went to the ultimate issue of whether Plaintiff is disabled, and as such it was "inherently neither valuable nor persuasive." ECF No. 11-1 at 9–10 (quoting 20 C.F.R. § 404.1520b(c)).

Regulations effective for all claims filed after March 27, 2017 direct that the ALJ will evaluate the "persuasiveness" of all opinions and prior administrative medical findings in the record by assessing multiple factors, including supportability, consistency, the length and nature of the relationship of the source with the claimant, the source's specialization, and "other factors" that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c). While the ALJ need not explain in his decision how he considered all of the factors, he must explain how he "considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings . . . . " 20 C.F.R. § 404.1520c(b)(2).

The regulations make clear that the ALJ—and not the claimant's medical sources—is responsible for making the determination or decision about whether the

claimant is disabled. *See* 20 C.F.R. § 404.1520b(c)(3). As such, statements on issues reserved to the Commissioner are considered "inherently neither valuable nor persuasive," and the ALJ "will not provide any analysis about how we considered such evidence in our determination or decision, even under § 404.1520c." 20 C.F.R. § 404.1520b(c).

Here, the opinion at issue is that Plaintiff is "unable to function at work full-time" and that Plaintiff needs part-time work. AR at 288; *see also* 286, 289, 292. Under 20 C.F.R. § 404.1520b(c)(3)(i), statements that a Plaintiff is or is not "able to work, or able to perform regular or continuing work" are considered statements on issues reserved for the Commissioner. Flynn-Aikins' opinion regarding part-time work fits under the definition in the regulation, so the Court agrees with the Commissioner that the ALJ did not need to discuss its persuasiveness. *See* 20 C.F.R. § 404.1520b(c).

**2. Substantial evidence supported the ALJ's decision.**

Plaintiff additionally argues that the ALJ's decision is not supported by substantial evidence because the ALJ improperly rejected the opinions from treating providers Flynn-Aikins and Ellen Silver, LCSW, mischaracterized the objective evidence on mental status exams, and gave too much weight to Plaintiff's hobbies. ECF No. 10-1 at 21–23.

Beginning with the treating provider medical opinions, Plaintiff argues that the ALJ failed to interpret them as based on Plaintiff's functioning in a hypothetical situation (if he returned to work), and "not how he was currently functioning." ECF

No. 10-1 at 21. Plaintiff seemingly suggests that his functioning would decline if he returned to work, and the opinions were anticipating that decline. ECF No. 10-1 at 21–22. While the instructions on the forms did ask the providers to rate the patient's ability to work "in the normal economy . . . on a sustained basis,"[6] the forms did not ask the providers to adjust the patient's average functioning based on a hypothetical lifestyle change of returning to work. *See* AR at 565, 646. The ALJ's interpretation of the opinions as overstating Plaintiff's current limitations, AR at 19–20, is therefore consistent with the language of the forms. Indeed, if the opinions were based on Plaintiff's hypothetical future decline in functioning rather than his current functioning, as Plaintiff suggests they should be, then the ALJ would be unable to evaluate the opinions for supportability and consistency as required. *See* 20 C.F.R. § 404.1520c.

Moreover, the ALJ's finding that the two opinions are supported and consistent regarding some limitations, but not to the extent opined, is based on substantial evidence. *See* AR at 19–20. Plaintiff argues that the ALJ "erroneously characterized" Plaintiff's medical records on mental status exams because the treatment notes showed "anxious presentation." ECF No. 10-1 at 22. Yet during multiple appointments, the treatment notes reflected an "appropriate" affect. *See* AR at 285, 291, 294, 300, 303, 399, 402. As such, the ALJ's characterization of the treatment notes as "generally normal," AR at 17, is supported by substantial evidence. *See Cage*

---

[6] The forms asked the treating sources to "rate the individual's capabilities to perform the following basic mental activities of work **in the normal economy** (not sheltered, subsidized or support employment, or work with special accommodations) **on a sustained basis** . . . defined as a regular 40-hour work week." AR at 565, 646 (emphasis in original).

*v. Comm'r of Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012) (The Second Circuit will "defer to the Commissioner's resolution of conflicting evidence.").

Further, the abnormal objective findings of slow speech, AR at 598, 606, 611, 629, lethargic thought process, AR at 626, being withdrawn, AR at 594, and tearful, AR at 600, on some mental status reviews were accounted for in the limitations to simple tasks and decision making, occasional changes to routine, and occasional interaction with others. *See* AR at 15. As the ALJ pointed out, the treatment records did not support a limitation in arriving on time or missing appointments. *See* AR at 20.

Plaintiff additionally objects to the ALJ's reliance on Plaintiff's activities of daily living such as helping his father-in-law and making crafts to sell (ECF No. 10-1 at 22–23), but the Court notes that "the ALJ was entitled to consider Plaintiff's daily activities as part of the broader record of Plaintiff's functional limitations." *Briselida R. v. Comm'r of Soc. Sec.*, No. 522CV01290TJMML, 2023 WL 9600841, at *10 (N.D.N.Y. Nov. 20, 2023), *report and recommendation adopted sub nom. Briselida R. v. O'Malley*, No. 522CV1290FJSML, 2024 WL 532568 (N.D.N.Y. Feb. 8, 2024) (citing, *inter alia*, *Medina v. Comm'r of Soc. Sec.*, 831 F. App'x 35, 36 (2d Cir. 2020)). For example, Plaintiff argues that the craft show was limited to one day, but that does not account for the time and effort Plaintiff spent making the items for sale.

Finally, Plaintiff asserts that the ALJ improperly "acted as his own medical expert," relying on *Daniel W. v. Comm'r of Soc. Sec.*, No. 20-CV-1786-FPG, 2023 WL 3220502, at *2 (W.D.N.Y. May 3, 2023). ECF No. 10-1 at 24. The Court disagrees.

Unlike the ALJ in *Daniel W.*, who found all of the medical opinions unpersuasive and thus had no basis for the RFC, *see* 2023 WL 3220502, at *2, here the ALJ found the opinion from consultative examiner Jacqueline Harbert, Psy.D. to be somewhat persuasive and the opinion from Flynn-Aikins to be limitedly persuasive. *See* AR at 18, 20. Further, the ALJ specifically tied the opinions to each limitation he included in the RFC. *See* AR at 18–20.

In sum, the ALJ was not required under 20 C.F.R. § 404.1520b(c) to discuss an opinion on an issue reserved for the Commissioner, and the ALJ supported his findings with substantial evidence. *See Teena H. o/b/o N.I.K. v. Comm'r of Soc. Sec.*, 521 F. Supp. 3d 287, 292 (W.D.N.Y. 2021) ("Absent a legal error, the Court must uphold the Commissioner's decision if it is supported by substantial evidence, even if the Court might have ruled differently had it considered the matter in the first instance.") (internal citations omitted).

## CONCLUSION

For the foregoing reasons, Plaintiff Derek S.'s motion for judgment on the pleadings [ECF No. 10] is DENIED, and the Commissioner's motion for judgment on the pleadings [ECF No. 11] is GRANTED. The Clerk of Court is directed to enter judgment on behalf of the Commissioner and close this case.

SO ORDERED.

DATED: October 6, 2026
Rochester, New York

HON. MEREDITH A. VACCA
United States District Judge